## LANE et al. v. URBAHN. (No. 7200.)

(Court of Civil Appeals of Texas. San Antonio. Nov 26, 1924.)

1. Appeal and error ⊜➙1213—Issues improperly submitted where contrary to disposition on former appeal.

Where contentions urged were made in former trial and appeal, and were disposed of adversely to plaintiff, trial court should not have submitted such issues to jury, or considered them in rendering judgment.

2. Mines and minerals ⊜➙58—Misrepresentations held not ground for canceling oil lease.

Cancellation of oil lease was not authorized, because at time lease was executed promoters had not organized lessee corporation, contrary to representations, and lessor executed confirmatory contract while ignorant of fact that in meantime such corporation had been organized, where promoters represented that they intended to operate through a corporation, and no possible injury to lessor occurred, because organization of corporation took place later than represented.

3. Mines and minerals ⊜➙77—Cancellation of oil lease for abandonment by lessee held not warranted.

Cancellation of oil lease, because project had been abandoned by lessee, was not warranted where, on lessor's declaration of his intention to enforce forfeiture, lessee insisted that he be permitted to exercise right granted in lease to sell parts thereof.

4. Mines and minerals ⊜➙78(5)—Lessee's obligation to begin drilling oil well within six months as required by lease held waived.

Lessor waived lessee's obligation to begin drilling oil well within six months as required by lease, where he did not complain of failure to actually begin drilling within time called for, and afterwards permitted lessee to proceed at considerable expense to commence and drill a well to a depth of 1,600 feet.

5. Mines and minerals ⊜➙74—Oil lease construed to mean that original lessee guaranteed performance of contract in event of assignment of lease to others.

Oil lease, providing that lessee guaranteed on part of its assigns full and faithful performance of all covenants and obligations imposed upon original lessee, construed to mean that original lessee guaranteed performance of contract in event of assignment of lease to others.

6. Reformation of instruments ⊜➙45(2) — When reformation authorized stated.

Reformation is never authorized, except upon clear and convincing evidence, not only of parties' real intention, but of precise terms of contract as it should have been written, and that omitted matter had been agreed to concurrently by both parties who had concurred therein down to time of execution of instrument.

7. Reformation of instruments ⊜➙25—Lessor held not entitled to reformation of clause in lease by which lessee guaranteed performance in event of assignment to others.

Lessor was not entitled to reformation of clause in lease providing that original lessee guaranteed performance of contract in event of assignment to others, where it was phrased in very language dictated by lessor and his agent, both of whom declared language expressed their intention when they inserted it in the contract.

Appeal from District Court, Webb County; J. F. Mullally, Judge.

Action by Albert Urbahn against L. M. Lane and others. Judgment for plaintiff, and defendants appeal. Reversed and remanded.

Hicks, Hicks, Dickson & Bobbitt, of San Antonio, and John L. Dannelley, of Laredo, for appellants.

J. D. Dodson, of San Antonio, for appellee.

SMITH, J. This cause has been tried and disposed of in the court below largely in disregard of the opinion of this court on a former appeal; the questions now presented being practically the same as those raised and disposed of in the former appeal. 246 S. W. 1070. There is no occasion to restate the facts in detail, nor discuss those questions at length.

The suit was brought by Urbahn against Lane and others to cancel an oil and gas lease covering land owned by Urbahn in Webb county. The right to cancel was based upon alleged false and fraudulent representations and promises, by which it is contended appellee was induced to execute the lease. In the alternative, cancellation was sought because of alleged abandonment of the lease by the lessees. Appellee recovered judgment on these contentions.

The lease contract, under which the parties finally proceeded, dated May 22, 1919, contained provisions that, if no well be commenced on the land on or before February 24, 1920, the lease should terminate as to both parties, unless the lessee paid certain rentals to lessor, and provision was made that, if the first well be a dry hole, a second well should be commenced in 12 months, unless the payment of rental was made in lieu of drilling, etc. It was further provided that—

"If the estate of either party hereto is assigned, and the privilege of assigning in whole or in part is expressly allowed, the covenants hereof shall extend to their heirs, executors, administrators, successors, or assigns.

---

⊜➙For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

"Lessee and his assigns agree to use all reasonable efforts known to or practiced by competent oil producers to commence a well on the land herein within 6 months from the date hereof.

"But it is expressly stipulated and understood that the lessee herein guarantees on the part of its assigns the full and faithful compliance of all the covenants and obligations imposed on the original lessee herein."

[1] Among other contentions of appellee it was claimed in the court below that the lease should be canceled because obtained from appellee through false and fraudulent representations: (a) That the promoters of appellant corporation were oil men of large means, and intended in good faith through said corporation to develop appellee's land for oil and gas purposes, and had provided said corporation with financial recources sufficient for such purposes; (b) that the promoters did not intend to sell or assign leases on any part of said land, except to persons who intended in good faith, and were financially able, to mine thereon for oil and gas; (c) that the lessees intended to proceed to develop the land in good faith, whereby the lessor was induced to execute the lease in controversy, which required the sinking of only one well at a time, although lessees "knew that good-faith development of said tract could not be made with one well." These very contentions were made in the former trial and appeal, and were disposed of adversely to appellee upon grounds fully stated in the former opinion. Under the pleadings and evidence, which, we assume, was not changed upon the second trial, and under the opinion of this court in the former appeal, the court should not have submitted these issues to the jury, or considered them in rendering judgment. Appellants' fourth, fifth, sixth, seventh, eighth and ninth assignments of error are sustained.

[2] It is contended by appellee that the lease should be canceled, because of the finding of the jury that, at the time the original contract was executed, the promoters had not organized appellant corporation, although they had represented the contrary to be the fact, and that appellee executed the confirmatory contract while ignorant of the fact that in the meantime such corporation had been organized, as it admittedly had been. We do not regard these findings as at all material. It seems thoroughly established; and appellee repeatedly alleged, and urges the fact here, that the promoters represented that they intended to operate through a corporation. The original lease was executed, according to its own recitals, on February 24, 1919, but the notary's certificate shows that its execution was not acknowledged by appellee until April 1st, and a recital in the confirmatory contract shows that it was not in fact delivered until April 1st. In the meantime, on March 5th, the corporation was duly chartered. No possible injury is shown to have resulted to appellee from this slight hiatus, if any. He was told, and expected, that the promoters would act through this corporation, as they have done throughout their operations. It was the vehicle through which it was understood by all parties the promoters would act. These findings of the jury cannot possibly affect the validity of the contract. Appellants' twelfth and thirteenth assignments of error are sustained.

[3] It is further contended by appellee that the contract should be canceled, because the project had been abandoned by the lessees. The court found the following facts upon this issue, as stated by appellee in his brief:

"That, shortly prior to the filing of the suit, plaintiff was notified by Gruver, vice president of the corporation, and officer in control of the well, that the company was wholly without funds, and utterly disabled from further developing the land, and that he would furnish no additional fund, and that all the defendants definitely abandoned any intention of further development, unless and until plaintiff would agree that leases should be peddled promiscuously with which to provide money for development."

It will be observed that this finding amounts to no more than that the lessee was insisting, in the light of appellee's declaration of his intention to enforce forfeiture, that he be permitted to exercise the right unconditionally vouchsafed in the contract, to sell parts of the lease. Appellee had repudiated the lease, and in doing so yielded any right he may have had to claim abandonment. Tex. Co. v. Curry (Tex. Civ. App.) 229 S. W. 643. The contract clearly provided an unconditional right of assignment, either in whole or in part, and when the lessor declared his purpose of enforcing a forfeiture, and of repudiating the whole contract, or of testing in the courts the right of assignment, appellant was justified in suspending development until lessor yielded, or the courts decided the controversy. We do not think the court's finding, nor the testimony set out in the briefs of the parties, warrant cancellation on the ground of abandonment. Appellants' thirty-second assignment of error is sustained.

[4] It was provided in the lease contract that the lessee and his assigns "agree to use all reasonable efforts known to or practiced by competent oil producers to commence a well on the land herein within 6 months from the date hereof." The well was not actually commenced within that period, but expensive and extensive preparations were made by lessees to that end. Appellee, however, did not complain of the failure to actually begin the drilling within the time called for, and afterwards permitted the lessees to proceed at considerable expense to commence and drill the well to a depth of 1,600 feet. This silence and acquiescence

on the part of appellee amounted, as a matter of course and of law, to a waiver of the lessees' obligation to endeavor in good faith to commence drilling within the period specified. Benavides v. Hunt, 79 Tex. 383, 15 S. W. 396. Appellants' eleventh assignment of error is sustained.

[5-7] In the final contract between the parties a clause was inserted, at the dictation of appellee, that—

"But it is expressly stipulated and understood that the lessee herein guarantees on the part of its assigns the full and faithful performance of all the covenants and obligations imposed upon the original lessee herein."

It is contended by appellee, and the jury so found, that by this clause the parties mutually agreed and intended to provide that the lessee "was not intending to assign leases except to persons who intended to develop for oil and gas in good faith." Appellee sought reformation of the contract in accordance with this contention, and the court submitted the issue thereon to the jury. This was palpable error.

The clause is too plain and unambiguous to require or authorize reformation for the purpose of enforcing a forfeiture of the lease. It plainly provides but one thing, to wit, that the original lessee shall guarantee the performance of the contract in event of the assignment of the lease to others. It is phrased in the very language dictated by appellee, and his agent, both of whom are business men of large affairs, and both of whom declare the language of the clause precisely expressed their intention when they inserted it in the contract. They say their whole purpose was to procure development of the land, and appellee's agent, who negotiated the transaction and dealt with the lessees in appellee's behalf, testified repeatedly that this clause was intended to protect lessor, and secure development in the event the lessee assigned the lease as a whole by procuring the lessee's guarantee of the faithful performance of the contract. If that was the purpose of the clause, then it precisely serves that purpose; if its purpose was otherwise, then the evidence is too uncertain and indefinite to warrant reformation, which is never authorized except upon clear, unmistakable, and convincing evidence, not only of the real intention of the parties, but as well of the precise terms of the contract as it should have been written, and that the omitted matter had been agreed to concurrently by both parties, who had concurred therein down to the very time of the execution of the instrument. Simpkins Equity, p. 734, and authorities there cited; Moore v. Geiseke, 76 Tex. 543, 13 S. W. 290; Ry. v. Shirley, 45 Tex. 377. Appellee did not bring his case within any of these rules, and is very clearly not entitled to a reformation of

that clause in the lease contract. Appellants' tenth, sixty-third and seventy-third assignments of error are sustained.

Appellants, in a 258 page brief, have presented their appeal through the medium of 96 "points," which are in turn predicated upon 92 assignments of error. It would be a bootless task for this court to undertake to discuss and decide all the points presented in this brief. On the contrary, we have taken up the several findings of the jury, and of the court, as they are stated in appellee's brief, and have disposed of the appeal solely upon the questions raised, one way and another, by those findings. Those questions are most directly presented in those of appellants' assignments of error which we have specifically sustained. All other assignments become immaterial, and on that ground are overruled. Accordingly, the judgment is reversed, and the cause remanded for further proceedings not inconsistent with the opinion of this court in this and the former appeals.

Because of some confusion occurring in the original opinion in indicating the assignments of error in which the questions disposed of were presented, we have revised that opinion for the purpose, and to the extent only of correctly designating those assignments of error. This has been done in the foregoing, which will be adopted as the opinion of the court in lieu of the original opinion, which is withdrawn.

Appellee's motion for rehearing is overruled.