Mary BEESON, Appellant,

v.

Don MARSHALL, Appellee.

No. 10919.

Court of Civil Appeals of Texas.

Austin.

Jan. 10, 1962.

Rehearing Denied Jan. 31, 1962.

Ronald Smallwood, Karnes City, for appellant.

Groce & Hebdon, Richard Tinsman, San Antonio, for appellee.

HUGHES, Justice.

This suit is by Don Marshall, appellee, against Mary Beeson to recover sums of money allegedly retained by her in excess of the amounts authorized by a contract or contracts between the parties. The contracts related to services required of appellant in connection with appellee's busi-

ness of furnishing communications equipment to users and conducting an answering service and radio dispatching service. These businesses were conducted by appellee under the names of Air-Page, Television Repair Company and T. V. and Rental Service. Appellant cross claimed, contending that she was entitled to more compensation than she had received.

Trial to a jury resulted in verdict and judgment for appellee and against appellant on her cross action.

■ The first point presented by appellant is that the Court erred in sustaining a special exception to paragraph eight of her Third Amended Original Answer and Cross Action. We copy from said paragraph eight:

"Defendant specially denies the allegation of sub-paragraph (c) of paragraph V of said petition to the effect that plaintiff and defendant agreed that defendant would receive $32.00 per month for servicing Capitol Wrecker Service so long as it had three mobile units. In this connection, defendant says that prior to the execution of said contract, plaintiff orally represented to the defendant that each mobile unit to be serviced by defendant would be computed, under the terms of said contract, on the basis that each code number serviced by defendant would be, and would be considered as, a mobile unit serviced. Defendant relied upon such representation of the plaintiff, believing the same to be true, and except for her belief in and reliance upon such representation, she would not have entered into the contract with the plaintiff as she did. The defendant serviced five code numbers for said Capitol Wrecker Service during each of said months, December, 1957, to August, 1958, inclusive.

"Said contract provides that Beeson 'is to be paid the sum of $12.00 per month for the first two mobile units serviced per customer, any other units

added to be charged for on a graduated scale mutually agreed upon by Beeson and Air Page, payable monthly in advance.' After the execution of said contract, defendant and plaintiff did orally and mutually agree that defendant would be paid on the following scale for each customer having more than two mobile units, as follows: * * *"

There follows a scale of prices from which appellant concludes that she was entitled to be paid $54.00 per month for services rendered to Capitol Wrecker Service instead of the $32.00 per month allowed her by appellee.

Appellant then pleaded:

"Plaintiff is estopped to claim or assert that defendant serviced less than five mobile units per month for Capitol Wrecker Service, since she serviced five code numbers assigned to Capitol Wrecker Service for each of said months."

The exception made, and sustained, to this pleading was that it constituted an attempt to vary the terms of a written unambiguous contract.

It is to be noted that appellant did not seek reformation or cancellation of the contract.

It is also to be observed that appellant did not allege that the contract was ambiguous, nor does she take this position in her brief. We quote the substance of argument:

"Obviously the allegations stricken were not subject to the supposed vice that they tended to vary a clear and unambiguous contract. They alleged a state of facts which would constitute an estoppel against appellee, which would prevent him from recovering on the basis that appellant only serviced 3 mobile units per month for Capitol Wrecker Service if she in fact serviced 5 code numbers."

The prior agreement pleaded by appellant being inconsistent with the provisions of the subsequent written contract was merged in it and the parol evidence rule precludes enforcement of the prior agreement. Hubacek v. Ennis State Bank, 159 Tex. 166, 317 S.W.2d 30.

There was no pleading that the prior agreement was omitted from the written contract through fraud, accident or mistake. See Distributors Investment Co. v. Patton, 130 Tex. 449, 110 S.W.2d 47, Albers v. Schumacher Company, 314 S.W.2d 852, Waco Civil Appeals.

■ Neither can such prior unenforceable agreement form the basis of an estoppel. Ford Motor Co. v. Maddox Motor Co., Tex.Civ.App., 3 S.W.2d 911, 920, Affirmed 23 S.W.2d 333, Tex.Comm. of App. See Hillman v. Graves, 134 S.W.2d 436, San Antonio Civil Appeals.

It is our opinion that the Trial Court did not err in striking the allegations, above quoted, from appellant's pleading.

Appellant's third and fourth points, jointly briefed, are that the Trial Court erred in sustaining special exceptions to paragraphs thirteen and fourteen of her cross action by which appellant sought recovery of $1500.00 in attorneys' fees by reason of having demanded payment of her accounts, in the sum of $684.68, for a period of more than thirty days.

There is no need to discuss or decide this point since appellant did not recover on her cross action and we are affirming this judgment.

■ Appellant's fifth through eighth points are jointly briefed. They complain of the action of the Court in sustaining special exceptions to paragraphs 19 through 22 of her trial petition.

Paragraphs 19 and 21 pleaded, in general, that because of appellee's failure to maintain certain of its one-way and two-way equipment in good operating condition that she, appellant, lost customers and earnings from them amounting to $477.32 (par. 19) from "one-way" customers and $249.50 from the "two-way" customers.

The written contract between the parties obligated appellee to furnish and maintain this, and other, equipment and to pay for its installation, maintenance and repair.

Appellee's exception to this pleading, which the Court sustained, was that it fails to plead the proper measure of damages, asserting that lost profits and not lost earnings should be the measure of recovery.

Appellant filed a trial amendment supplementing paragraph 19 by adding and alleging that even though she recovered the amount of her lost earnings, she would still have no profit under this contract, and that the sum stated was a monetary loss to her.

This pleading was not excepted to, and was not stricken.

It is unnecessary to plead a measure of damages. It is only necessary to plead facts from which, if proved, the Court or jury can apply the proper criterion. 17 Tex.Jur.2d p. 263.

We believe, that as to this feature of the case, the pleadings were adequate to admit proof of damages for the breach of the contract alleged.

Appellee contends that no such evidence is found in the record and appellant does not suggest the presence of any such evidence. It is our opinion that, under those circumstances, appellant has suffered no injury by the Court's action under consideration. Appellant simply failed to sustain the burden of proving her case as pled.

■ Paragraph 20 of appellant's cross action alleged that the Federal Communications Commission had suspended the license of appellee to operate the two-way transmitter for his violation of its rules and that this prevented her from operating such equipment for the benefit of her customers, and that she was thereby damaged.

Appellee excepted to this paragraph on the ground that it did not allege in what manner appellee had violated the rules of the Commission, and this exception was sustained.

Appellant filed a trial amendment deleting the allegation that the license was suspended on account of appellee's violation of Commission's rules, but retaining the allegation of its suspension.

There is no mention of this operator's license in the contract between the parties, and we are uninformed as to any legal duty on the part of appellee to keep such license current.

There is no evidence in the record that appellant sustained any monetary damages as a result of the suspension of this license.

Under these circumstances, harmful error is not shown in the ruling of the Court.

■ Paragraph 22 of appellant's cross action pleaded her damages resulting from the alleged breach of contract by appellee in not properly maintaining the equipment furnished appellant, in particular that she was required to employ additional employees.

The exception to this paragraph was that it did not name the employees appellant alleged she was required to hire to perform the services required of her under the contract, and other details of their employment.

Appellant, after this exception was sustained, amended her cross action and furnished the desired information. Thus, no error is shown. Further, we do not find this point briefed, except, perhaps, in a most general way.

■ Points nine through thirteen are jointly briefed. They complain of the admissibility of parol evidence to explain or interpret the meaning of the words "graduated scale" as used in this paragraph of the contract:

"As a partial consideration for the service to be rendered by Beeson she is to be paid the sum of *$12.00* per month for the first two mobile units serviced per customer, any other units added to be charged for on a graduated scale mutually agreed upon by Beeson and Air Page, payable monthly in advance."

The objection was that in the absence of pleading fraud, accident or mistake, parol evidence was inadmissible as varying the written terms of the contract.

This objection was untenable. Standing alone, this provision of the contract, as to additional units, is incomplete and unenforceable.

We do not consider the words "graduated scale" as having great significance. The important inquiry is: What charge did the parties agree upon for such additional units, and how were such charges to be divided between the parties? Any such charge and division would, in our opinion, constitute a "graduated scale" for the purpose of the contract.

Appelleee testified to agreements with appellant regarding the division of specific charges. Appellant testified contrarily. These differences were submitted to the jury which made findings upon which the judgment is based. We need not discuss the evidence because appellant contends only that the verdict is not supported by admissible evidence.

The testimony objected to did not vary the written contract. It for the first time created a contract for charges and division of charges as to customers having more than two units. That the charges or division were not uniform as to all customers is of no moment. The parties could agree as they pleased. The jury found the terms of such agreement, and we have no cause to disagree with its findings.

Point fourteen complains of the Court's refusal to submit special issues to the jury based on appellant's pleading made the sub-

ject of her first point, her contention being that the prior agreements there considered may constitute an estoppel against appellee. If the prior agreements were merged in the written contract, as we have held, then such prior agreements cannot form the basis of an estoppel. To so hold would greatly impair written agreements, and would practically eliminate preliminary negotiations between contracting parties. Each would be estopped by something said during such negotiations, although the executed written contract conflicted with such statements or agreements. The discussion made and authorities cited under Point One show this point to be wholly without substance.

 By her last point, appellant complains of the action of the Court in refusing to permit her to testify that certain of her customers who discontinued their service gave as their reason the poor condition of the equipment furnished by appellee.

No customer was called to testify. The testimony was objected to on the ground that it was hearsay.

Appellant cites no authority to sustain the admission of this testimony. She gives as her only reason for its admissibility that "Under the contract she constituted an agent or intermediary between Marshall and his customers." The contract does not bear this out. In fact, it repudiates this relationship, and we quote from it:

"It is intended by this contract to create the relationship of independent contractor and owner between Beeson and Air Page, respectively. Beeson shall not be deemed an employee or partner of Air Page, Beeson shall not have. any right of decision over the kind or amount of equipment to be furnished by Air Page, the maintenance thereof, nor the nature of the communications, and the decision on all such matter shall be in the exclusive discretion of Air Page."

By cross·point, appellee seeks to invoke Rule 438, Texas Rules of Civil Procedure, and have us find that this appeal was taken for delay and without sufficient cause. The point is overruled.

No reversible error being found, the judgment of the Trial Court is affirmed.

Affirmed.